May it please the Court, Charles Rabinowitz for the claimant. I just want to add a few things to what the argument that took place in the Roberts case. Judge Smith had asked a question about interpreting the statute as a whole, and I think one of the key sections you have to look at is 914A, where the statute reads, Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto without an award, except where liability to pay compensation is controverted by the employer. So there they use without an award, and I think it's extremely difficult and strained to try to take that section and look at it consistently with section 6C, and interpret 6C to mean it includes payment without an award includes receiving or payment with an award includes receiving compensation. I don't think, I just don't think, I think it's a very strained way of looking at it. The other thing, one of the issues that Mr. Hugg raised was the difficulty of implementing this. And I think it's, as Mr. Glellen mentioned in his brief and Roberts and I mentioned, you can go to the, as soon as a person's hurt and you know that this is a maximum compensation case, the insurance company or the employer can go to the OWCP, the district director's office, and ask for an award at that point at the maximum rate, and that would be a newly awarded compensation rate, and that would fix the award at the time of the injury. So this can be worked out. And if it can't, if it's a difficult thing, this is something you go back to Congress for. Well, I guess my question is there where, I mean, I see this as something of a statutory interpretation, and I don't see us interpreting the statute as one clause at a time. I see us interpreting it as the whole of what we have in the statute. The government necessarily suggested its interpretation of the statute, given what it had in its brief, in effect. And all I was suggesting, if I have to interpret this statute, I've got to look at what the statute says as a whole. And I only see, I mean, the problem that I see is that as I read the statute, the place where award really does, if you will, change to be something other than just getting the compensation is pretty well laid out. And, of course, counsel responded appropriately. The only thing he could have responded for that, so that's all I was trying to do. And I'm thankful for your further illumination on the statute, because really this is a statutory interpretation. And you can't look at it to say, well, what makes the, what's the fairest way of doing it? And the Pepco case is another example of that, where the Supreme Court interpreted the statute just the way it was written, even though it was not a fair way of doing it. Counsel, do you want to talk about the interest rate issue? I was just about to get to that. I think you ought to get there, because we kind of heard the other, unless you've got some more to say. Right. Right. I think that's your point. The question in the interest is obviously the question of what rate applies. This Court and other courts have resolved the question that prejudgment interest does apply in this. And there's two reasons why this Court needs to change the Benefits Review Board's way of applying the Federal court statute on judgments. But don't we have a rule of deference that applies here or not? You have the rule of deference if it's reasonable, if the director's position is reasonable. And there's two reasons why the director's position is not reasonable. The first one is that the director, at least in its brief, in his brief, indicated that interest, one of the components of interest is an additional 10 percent for a penalty which would apply whenever there's a delay in compensation. And that is not correct. It's a incorrect interpretation of the statute. The 10 percent penalty under Section 14e only applies not when there's a delay in compensation, but when there's a delay in filing a notice of controversy. And in the Price case, this case, there was no delay in filing the notice of controversy. We never contended that there was. We never asked for the 10 percent penalty, and obviously we never got it. And it's the unusual case where that 10 percent penalty comes into play, not the typical case. The insurance companies know how this law operates, and they know how to file a notice of controversy. And so what we're dealing with is the Federal interest rate. The other thing the Director said that is not in – that's not reasonable is he said the way – the purpose of this is to compensate the worker for the loss of their investment income. Well, as a practical matter, you know, these people who work on the waterfront do not have hedge funds and European securities funds and real estate holding things and they're liquidating investments to live on. They're borrowing. They're borrowing. They're – some of them are upper middle class, but they're still middle class. And when they don't have any money to live on and they can't work, you know, what do people do? They borrow on their home equity. They borrow on credit cards. They borrow from friends and relatives and credit union, wherever they can get money. And using the rate that the Federal Government borrows on a one-year basis is just not realistic for the average person. I don't know of anybody who can borrow at a half a percent these days. The problem that I have, I guess, with your argument is that I'll agree I don't think there's any statute outlining the answer to this question. Then my question is whether the agency's answer is based on permissible construction. And, frankly, we've had this same interest rate in 28 U.S.C. 1961 since 1984. And here we are, 2009, and now you're coming in and saying it's an unreasonable application or an unreasonable, if you will, interpretation of what should have happened. I have a tough time finding out why it's that unreasonable if it's lasted for 25 years. Well, don't blame me for lasting it for 25 years. I would have been glad to have taken this up 15 years ago. Well, I understand that, but I guess where I have to give deference to the agency on some issues, it's a tough one. So I want you to answer that, because that's of some concern to me. Well, it doesn't become reasonable because it's lasted for a long time. Well, what makes it most unreasonable now other than the change in the interest rate out there in the financial markets, if you will? Well, there's two answers to that. Number one, 25 years ago, I think one could argue that that one-year Treasury bill rate was more reflective of the market. But in the last 15 years, things have changed, you know, economically around the world, and that is just not reflective of what goes on in the market anymore. And the second thing is when the board, the Benefits Review Board, adopted this rate in section 1961, they said specifically in the Grant case, we adopt this rate. And then in 1992, they said, but we're not going to compound it. And they said the reason we're not going to compound it is because this is not the normal way of doing things in the Federal law, even though the statute says to compound it, and even though there are numerous cases where they compound it. So if the Court is not going to go along with changing the rate, at least give the longshore workers who are hurt and were out of at least give them the compounding, the annual compounding, at least give them the same thing the government has to pay when they borrow money for a year. And but I still don't think, you know, I think this rate needs to be looked at, and I suggested the Federal tax rate, which is a much fairer way of looking at things and much more equitable. And that's really – this is not a statutory thing. This is – Isn't this prejudgment interest rate the rate that's used in all Federal cases where prejudgment interest is collectible? And why should this type of case be different? No. There are a number of cases, and I mentioned some of them in the 20HA letter that I sent to the Court recently, and also – But those cases, as I recall, were not Longshoreman Act cases. No, they weren't. There's no case under the Longshore Act other than the Benefits Review Board cases. I'm not aware of any circuit court or Federal district court cases on this. All you're suggesting is there are other areas of law where they apply a different interest rate. That's correct. And they usually – I understood. Thank you. We'll let you have a little bit of rebuttal time, counsel. We will hear from the Director. Thank you, Your Honor. May it please the Court. Judge, to answer your question – Would you repeat your name again for the record? Yes. It's Matthew Boyle for the Director. Your Honor, to answer your question about the level of deference due under the 6C argument, what the Court has said is that it affords considerable weight to the Director's construction and will defer to the Director's view unless it constitutes an unreasonable reading of the statute or is contrary to legislative intent. Well, your opposing counsel challenges that very point and says this is unreasonable. He does, Your Honor, but are we talking about – Help us. Are we talking about 6C or interest here, Your Honor, just to be clear? Are we talking about – Well, whichever. It really isn't that. The point is that your opposing counsel is suggesting that, at least as far as the interest rate issue is concerned, that it is unreasonable to apply the 1961 rate. The problem with that, Your Honor, is he hasn't demonstrated that. Here's what happened. The ALJ found an underpayment. The underpayment was $11,502. The interest rate was 5.94 percent, which means that the interest payable on that $11,502 was $10,156. So Mr. Price was paid interest of approximately 88 percent of the amount due in owing. Yes, but that's spread over years. It is, Your Honor. And I'm not saying that the amount should hold in any way. I'm just giving you some background here. What the Court said when it first agreed with the Director's position that interest is mandatory on overdue long-track payments is that it is necessary to ensure that workers are fully compensated, which means that the value of their compensation isn't diminished by the passage of time. Now, Mr. Price is arguing that he should have gotten a rate higher than the section 1961 rate. But to successfully argue for that, he has to establish, I think, that the rate that he got was insufficient, that that he would have to show that the delay he experienced reduced the value of his compensation by more than the amount of interest he was paid, in other words, that the section 1961 rate was lower than what he could have gotten out in the marketplace. And there is no evidence in this record of what was available out in the marketplace at the time. All Mr. Price has shown is that if interest had been paid under section 6621 or compounded under section 1961, he would have been awarded a higher interest rate. Are you suggesting that if he had made that showing, he would be entitled to a higher interest rate? I'm sorry, Your Honor? Are you suggesting that if he had made that showing, he would be entitled to a higher interest rate? No, Your Honor. I'm saying that there is no evidentiary basis for changing this here. This is Mr. Price's argument. He's saying, I was not adequately compensated. The value of my compensation was diminished more than what I got paid in interest. But Judge White is saying, well, suppose he did make the showing, then what? Well, I think here's the problem, Your Honor. I think he could make a showing based on interest rates generally, what's available out in the marketplace. I don't think in an administrative system where we want to treat all claimants the same and where we want to have certainty in what needs to be paid, that we want to look at individual circumstances of individual claimants to determine that. But I think, at the very least, if Mr. Price wants to make this argument, he has to show what was generally available out there, and he hasn't done that. But I understand that. You're not answering the question, I don't think. The question is, if he made this showing that marker rate or whatever was substantially more than the interest he received, would he be entitled to something more? Your Honor, I think, and I think that if there were evidence in this record to show that the national rate paid on savings accounts at the time was significantly more than 5.94 percent, then Mr. Price might have a shot at getting this turned around. Turn around within the agency or reviewed by us as a matter of law? I think probably reviewed by you as a matter of law, because this Court has said that the purpose of paying interest is to ensure that the value of the compensation is not eroded. And thus far, we have no information to show that the value of the compensation here was eroded. If we don't have that information, I don't see how the Court can overturn the evidentiary system that the Board chose to use. It just – there's no evidence there to do that. And because Mr. Price hasn't shown that, he attempts to restate the purpose for which interest is paid. And he does that in a couple of ways. The first is that he says that interest is paid to compensate injured workers for the cost of borrowing. And he argues that he couldn't have borrowed money at 5.94 percent, so that rate is de facto insufficient. There's no authority cited in this brief for the proposition that the borrowing rate, rather than, for example, the savings account rate, is the right rate to use. But even if he had authority to that effect, again, there's no evidence in the record of what the prevailing borrowing rate was at the relevant time. And that would be very difficult to do anyway, since the borrowing rates are going to fluctuate from claimant to claimant. Well – Sotomayor Where did this 5.94 percent come from? 5.94 percent, Your Honor, is the Section 1961 rate. It's in the statute. The 1961 rate, in effect, at the relevant time here. So are you really saying to us, then, that as far for representing now the person in charge of determining this rate, therefore the Secretary, and setting this 1961 rate, that the Secretary has no duty to show that his rate or the rate suggested by the Secretary is appropriate under the statute? I think it's appropriate, Your Honor, by virtue of the fact that we're using the same rate that's used, generally speaking, for prejudgment rates under Section 1961. I don't know how much more basis we need than that. If that's what the courts find to be the correct rate, our use of that rate certainly makes sense on a prejudgment basis. Counsel, you're treading on your co-counsel's time, if he's going to share time with you. I've got about 30 seconds left, Your Honor. Right? Okay. But if the Court doesn't have any additional questions, I will. No. No questions. Thank you, Counsel. May it please the Court, I'm Russell Metz, representing the employer and the insurance company in this matter involving Errol Price. I must say I'm a little uncomfortable with the argument that we may be opening a can of worms on this interest question time and again, as opposed to accepting the longstanding practice of applying the T-bill rate to prejudgment interest. If we start litigating on each of these cases, whether or not the interest rate that Mr. Klayment could have received at Bank A versus the T-bill rate, that is not something I'm interested in getting into in the future. I think what we need to do is stick with what the Director has been doing for the last 25 years and absent some showing that that is not worthy of this Court's deference because it is grossly unreasonable, which it's difficult to say that the U.S. Government T-bill rate is grossly unreasonable. I take it then you disagree with your co-counsel that in an appropriate showing, perhaps the Board might be persuaded to use a different interest rate measurement or perhaps, as a matter of law, we might find it different. Well, the Board in the Santos case did make a reference on Passant 2, a showing. But they were referring to district court cases where that was done. So I think that's more dicta than anything else. And they have in various district court cases, as Mr. Rabinowitz in his 28J submission showed, that in certain cases, ERISA cases, various other real estate damage cases, interest rates are peculiarly appropriate. But in a workers' compensation administrative law scheme, we've got a workable system. Obviously, the interest rate is not satisfactory to some people today. Back in the 80s, when the interest rate was higher, it was, as Mr. Rabinowitz referred to it, a victory for workers. And now it's not so much of a victory. But it's the same system. It's the same scheme. There's no reason to change it. And I think the Court owes that deference to the director to maintain that system. What about the compounding issue? Well, the compound issue, first of all, the Longshore Act doesn't accept the 28 U.S.C. 1961 in toto. The board, going back to the 1985 case, said we'll take Section A. Well, actually, there wasn't a Section A. There was just one section at the time, which applies to post-judgment interest in federal district court. But they said, well, we'll use that for prejudgment interest because that's what longshore cases involve. Then the statute was amended, 1961, to involve compounding under Section B. The Longshore Act is not obligated to follow that. And, in fact, the statute itself says it will only apply to this court, basically, and no others, referring to district court. So the Benefits Review Board has never picked up post-judgment mandates on compounding interest. Thank you, Counsel. Your time is up. Thank you, Your Honor. Mr. Rabinowitz, you have a few seconds, but we'll give you a full minute. Okay. Thank you. The Longshore Act is not obligated to follow Section 1961. It can follow whatever the courts agree is reasonable. And the director, the other thing I want to mention is in the Grant case back in 1984, the director's position was that the taxpayer rate in Section 6621 was the appropriate rate to follow. And now he's changed his position, and I'm suggesting to the Court that that probably was the correct position back then. And it's a much more equitable, and it's as simple to apply as Section 1961. And the other thing I would say is that if the Court is going to stay with 1961, please compound it so that the Longshoremen can get the workers can get a little bit more when they're paid, underpaid, the way Mr. Price was. And the basis for compounding is what? The basis is in the Statute. Well, two basis. Number one, it's in the statute, 1961. It's compounded annually. And number two, there's been a trend in the Federal courts, a definite trend towards compounding interest anyway, prejudgment interest in other types of cases. Thank you, Counsel. Thank you. The case just argued will be submitted for decision.
judges: Whyte, O'scannlain, Smith M., Goodwin, Fisher